UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TIMOTHY STEVEN LEAGUE,

        Plaintiff,

v.                                     Case No. 2:20-cv-650-SPC-NPM

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

## REPORT AND RECOMMENDATION

Plaintiff Timothy Steven League seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 19),[1] and the parties filed a Joint Memorandum (Doc. 21). As discussed in this report, the decision of the Commissioner should be affirmed.

## I.    Eligibility for Disability Benefits and the Administration's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like standing or reaching, nonexertional abilities like seeing or hearing, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude a return to past work or doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

**B.    Factual and procedural history**

On November 29, 2017, League applied for supplemental security income. (Tr. 200-228).[5] He asserted an onset date of November 2, 2017, alleging disability due to diabetes, diabetic neuropathy, and hypertension. (Tr. 106-107, 118, 221). As of the alleged onset date, League was 51 years old, and he had less than a high school

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv); *see also* 20 C.F.R. §§ 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by impairment(s)), 416.945(b)-(d) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

[5] League also applied for disability insurance benefits. (Tr. 195-199). During the ALJ hearing, League's attorney clarified that League was only proceeding on his supplemental-security-income claim because League did not have sufficient credits to qualify for disability-insurance benefits. (Tr. 43).

education. (Tr. 44, 106, 117). His past work included jobs as a flooring installer and warehouse worker. (Tr. 32, 45, 74).

League's application was administratively denied initially on January 11, 2018, and upon reconsideration on July 14, 2018. (Tr. 106-116, 117-129). At League's request, Administrative Law Judge Eric Anschuetz held a hearing on September 6, 2019. (Tr. 39-83, 147). The ALJ issued an unfavorable decision on October 24, 2019, finding League not disabled from the alleged onset date through the date of decision. (Tr. 18-33).

League's timely request for review by the administration's Appeals Council was denied. (Tr. 1-4). League then brought the matter to this court, and the case is ripe for judicial review.

## C.    The ALJ's decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 416.1400(b). Unlike judicial proceedings, the administration's hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there is a sufficient number of jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *Id*. at 1359; *see also* 20 C.F.R. § 416.912 (providing that the claimant must prove disability); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial

burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

At step one of the evaluation, the ALJ found League had not engaged in substantial gainful activity from November 29, 2017 (the application date), through October 24, 2019 (the date of decision). (Tr. 25). At step two, the ALJ characterized League's severe impairments as obesity and type II diabetes mellitus with neuropathy in the toes. (Tr. 25). At step three, the ALJ determined League did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 26).

As the predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 416.967(b) except the claimant can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. Stand and/or walk for six hours in an eight hour workday. Sit for six hours in an eight hour workday. Never climb ladders or scaffolds. Frequently climb ramps and stairs. Frequently balance and stoop. Never kneel, crouch, or crawl. He should avoid concentrated exposure to extremes of environmental heat, cold, and wetness. He should avoid constant exposure to workplace hazards such as unprotected heights and unshielded rotating machinery. Must be permitted to alternate sitting and standing. Limited to simple routine repetitive tasks.

(Tr. 27). Consequently, at step four, the ALJ determined League was not capable of performing his past relevant work. (Tr. 32). At step five, the ALJ found League could perform other work that exists in significant numbers in the national economy. In

support, a vocational expert opined during the ALJ hearing that two occupations represent the kinds of jobs that an individual with League's age, education, work experience, and RFC could perform:

(1)     routing clerk (DOT 222.687-022, light, SVP 2, 94,000 jobs nationally); and

(2)     screwdriver operator (DOT 699.685-026, light, SVP 2,311,000 jobs nationally).

(Tr. 32-33).[6]

## II.     Analysis

League's appeal presents the following issues:

(1)     whether the ALJ erred when assessing League's RFC by omitting the frequency of the sit/stand limitation;

(2)     whether the ALJ erred by not adopting in the RFC all limitations opined by persuasive state agency physicians or including such limitations in hypothetical questions to the vocational expert; and

(3)     whether the evidence submitted to the Appeals Council warrants a remand.

(Doc. 21, pp. 10, 19, 29).

### A.     Standard of review

The court "may not decide the facts anew, make credibility determinations, or

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.**      **Whether the ALJ erred when assessing League's RFC by omitting the frequency of the sit/stand limitation**

League requests the court reverse the ALJ's decision and award benefits because he argues the limitations in the RFC preclude competitive employment. Alternatively, League requests remand for further evaluation of whether the sit/stand option in the ALJ's hypothetical question would preclude work. (Doc. 21, pp. 10-13). League's contentions have no merit.

During the ALJ hearing, League testified that he has trouble standing and could only stand for about five minutes before needing to relieve the pressure on his feet by leaning against something or sitting down. (Tr. 61). League also testified he had difficulty sitting for more than about ten or fifteen minutes at a time. (Tr. 66-67). In addition, he stated he does not use a cane or walker. (Tr. 71).

After League testified, the ALJ posed hypothetical questions to the vocational expert. In his second hypothetical, the ALJ included the following limitation: "Must be permitted to alternate sitting and standing." (Tr. 76). The vocational expert testified that an individual with the sit/stand limitation could perform jobs in the national economy. (Tr. 77).

On cross examination, League's counsel asked the vocational expert whether there would be a point where the frequency between sitting and standing becomes counterproductive. (Tr. 78). The vocational expert responded that "if you have to alternate more than around 30 minutes, you're interfering with production and your

speed would not be efficient." Counsel then asked, based on League's testimony, whether alternating between sitting and standing every ten minutes would interfere with the cited jobs. The vocational expert responded affirmatively, noting such a limitation would preclude those jobs. In other words, the vocational expert testified that alternating between sitting and standing more frequently than every thirty minutes—for instance, every ten minutes—would preclude the jobs she cited. (Tr. 78). The ALJ followed up with League's counsel for his grounds of limiting League to only ten minutes of standing. (Tr. 81). Counsel responded the limitation was based on League's testimony and references to peripheral neuropathy (Tr. 81-82 (citing Tr. 880-885)).

League takes issue with the ALJ's RFC limitation that League "[m]ust be permitted to alternate sitting and standing" because it does not include a frequency qualifier. League interprets this limitation such that he must be allowed to alternate between sitting and standing "as needed, which could be more frequent than every thirty minutes." (Doc. 21, p. 12). Given this interpretation, League posits the vocational expert's testimony that such frequent alternation would preclude employment warrants reversal.

Substantial evidence supports the ALJ's RFC finding. The RFC is the most a claimant can still do in a work setting despite his limitations. 20 C.F.R. § 416.945(a)(1), (a)(3). The assessment of a claimant's RFC is reserved for the

Commissioner, and at the hearing level, the ALJ is exclusively responsible for formulating the claimant's RFC after an evaluation of the relevant evidence in the record. *See* 20 C.F.R. §§ 416.920(e), 416.927(d)(2), 416.945(a)(1), (a)(3), 416.946(c).

Here, League's argument ignores the fact that the ALJ expressly rejected League's allegation that he should be limited to standing for only ten minutes because there was no medical opinion to support this alleged limitation. The ALJ also reasoned that the allegation is not supported by League's testimony that he drives and does not use an assistive device, showing he is not as limited as alleged. (Tr. 31). The ALJ referenced throughout his decision the many examination findings of record that show League had full motor strength, a normal gait and station, normal proprioception, and normal coordination. (Tr. 26-30, 372, 382, 395, 445, 454, 474, 480, 485, 544, 831, 837, 843, 848, 859, 865). Although League had some limitations in the range of motion in his back and extremities, the sit/stand option in the RFC accommodated them.

League points to no binding authority that requires an ALJ to include a frequency element for a sit/stand limitation. Here, the reasonable implication of the sit/stand option is that League does not need to alternate between sitting and standing every ten minutes. Rather, the ALJ's analysis implies League must be able to alternate positions as is typical in the cited jobs. *See Williams v. Barnhart*, 140 F.

App'x 932, 937 (11th Cir. 2005) ("Although the ALJ failed to specify the frequency that [the claimant] needed to change his sit/stand position, the reasonable implication of the ALJ's description was that the sit/stand option would be at [the claimant's] own volition."). The ALJ was not required to ascribe a specific frequency to this limitation. And even if the frequency was considered to be "as needed," the ALJ provided substantial evidence for discounting League's allegations that he must change positions every ten minutes, thus implying that an "as needed" frequency for League would not be so often as to preclude work.

### C.     Whether the ALJ erred by not adopting in the RFC all limitations opined by persuasive state agency physicians or including such limitations in hypothetical questions to the vocational expert

While couched in terms of whether the ALJ properly evaluated the opinions of the state[7] agency physicians (Doc. 21, p. 19), League does not challenge the persuasiveness of the agency opinions.[8] Rather, League claims the ALJ failed to explain why the RFC deviated from the agency opinions as to workplace hazards.

---

[7] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a).

[8] For disability cases filed on or after March 27, 2017—such as this one—the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various demands of work or adapt to work-related conditions. *See* 20 C.F.R. § 404.1513(a)(2). Furthermore, medical opinions related to claims filed on or after March 27, 2017, are subject to a different assessment about their persuasiveness rather than their weight. *See* 20 C.F.R. §§ 404.1520c, 404.1527(c). Thus, the authority League cited predates this regulatory change. (*See* Doc. 21, pp. 19-22).

State agency non-examining physicians, Warren Feldman, M.D., and Joseph Chiaro, M.D., opined that, among other things, League is limited to medium work and should avoid even moderate exposure to hazards. (Tr. 112-114, 126-127). They both explained this limitation is due to League's morbid obesity. (Tr. 113, 126). The ALJ found these opinions generally persuasive, except he believed that League is limited to a reduced range of light, rather than medium, exertional activity based on abnormal monofilament tests and obesity. (Tr. 31). Thus, the ALJ found League was generally *more* limited than the state agency consultants.

In the RFC assessment, instead of adopting the state agency opinions that League should avoid even moderate exposure to hazards, the ALJ found League "should avoid constant exposure to workplace hazards such as unprotected heights and unshielded rotating machinery." (Tr. 27). League contends the ALJ posed an "incomplete" hypothetical question to the vocational expert. But when posing hypothetical questions to the vocational expert, the ALJ included the limitation of avoiding *constant* exposure to hazards, to which the vocational expert testified there were jobs League could perform with that limitation. (Tr. 75-77).

League's argument that the ALJ should have limited him to moderate exposure to hazards to coincide with an agency opinion that was "generally" persuasive is also without merit. As an initial matter, "moderate" is not a defined environmental frequency in the DOT. Rather, the DOT uses the following

environmental frequencies: "Not Present" meaning "[a]ctivity or condition does not exist"; "Occasionally" meaning "[a]ctivity or condition exists up to 1/3 of the time"; "Frequently" meaning "[a]ctivity or condition exists from 1/3 to 2/3 of the time"; and "Constantly" meaning "[a]ctivity or condition exists 2/3 or more of the time." *Appendix D. Environmental Conditions*, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (1993 ed.).

Moreover, the regulations do not require an ALJ to adopt into the RFC every part of an opinion that he otherwise finds persuasive. *See* 20 C.F.R. §§ 416.920c(a), 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."); *see also Freyhagen v. Comm'r of Soc. Sec.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, *8 (M.D. Fla. Sept. 26, 2019) (acknowledging that ALJ found an opinion persuasive under the new regulations but made a different finding about the severity of an impairment and explaining "the ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source" because the ALJ is responsible for assessing the RFC). Rather, the applicable regulations require the ALJ to evaluate the persuasiveness of medical opinions and articulate how he considered the supportability and consistency factors, which the ALJ properly did here. *See* 20 C.F.R. § 416.920c(a)-(b). Nor was the ALJ

required to discuss and evaluate each aspect of the prior administrative findings; under the regulations, the ALJ is permitted to articulate consideration of multiple opinions or findings in a single analysis. *See* 20 C.F.R. § 416.920c(b)(1). Thus, the ALJ did not err in electing not to discuss or adopt those aspects of the prior administrative findings related to exposure to hazards.

League summarily argues that the need to avoid even moderate exposure to hazards conflicts with the requirements of the screwdriver operator job, which requires occasional exposure to moving mechanical parts. *Power-screwdriver Operator*, DICOT 699.685-026, 1991 WL 678865; (Tr. 339); (Doc. 21, p. 21). However, he fails to develop this argument, such that the court should consider it waived. *See, e.g.*, *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (holding that "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived"); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (holding claimant an waived issue because he did not elaborate on claim or provide citation to authority regarding claim). Even assuming this argument is not waived, it has no merit. As previously stated, "moderate" is not a valid frequency, and besides, there is no apparent inconsistency between occasional and less than moderate exposure. And even if League's argument was not waived and had merit, any error is harmless because the routing clerk position features no hazards. *Routing Clerk*, DICOT 222.687-022,

1991 WL 672133; *see Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019) (finding any error in ALJ's conclusion that the claimant could perform two jobs was harmless because the claimant was capable of performing the third, remaining job, which existed in sufficient numbers).[9]

### D. Whether the evidence submitted to the Appeals Council warrants a remand

Finally, League argues this case should be remanded based on new evidence submitted to the Appeals Council after the ALJ's decision. (Doc. 21, pp. 29-32). First, League refers to a September 19, 2019 x-ray of League's right knee, which shows degenerative changes, most significantly involving the patellofemoral compartment. (Tr. 105). Second, he refers to a November 26, 2019 MRI report of the lumbar spine, which shows moderate left paracentral disc protrusion at L4-L5, some causal disc extrusion moderately impressing upon the thecal sac, some neural foraminal encroachment, and other abnormalities. (Tr. 102).

The Appeals Council determined that the knee x-ray and some other records dated September 1, 2019, through November 20, 2019, from Family Health Centers did not show a reasonable probability of changing the outcome of the ALJ's

---

[9] The estimate of 94,000 jobs nationally for the routing clerk occupation is sufficiently numerous. (Tr. 33); *see Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) ("We have upheld an ALJ's finding that 174 small appliance repairman positions in the area in which the claimant resided, 1,600 general appliance repair jobs in Georgia, and 80,000 jobs nationwide established the existence of work in significant numbers." (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015) (finding an aggregate of four occupations totaling 23,800 jobs nationally was significant).

decision. It also found that the lumbar MRI and other records dated November 26, 2019, through January 6, 2020, from Family Health Centers did not relate to the period at issue because the ALJ decided League's case through October 24, 2019. Therefore, the Appeals Council found that these records would not affect the ALJ's decision about whether League was disabled beginning on or before October 24, 2019. (Tr. 2).

"Generally, a claimant is allowed to present new evidence at each stage of the administrative process, including before the Appeals Council." *Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 857 (11th Cir. 2018) (citing 20 C.F.R. §§ 404.900(b), 404.970(b) (2016)). If the claimant submits new evidence after the ALJ's decision, the Appeals Council must review it if it "is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5) (effective from Jan. 17, 2017, to Dec. 15, 2020); *see also* 20 C.F.R. § 416.1400(b).

A court may review a denial of review by the Appeals Council under sentence four of section 405(g). *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). The Appeals Council does not need to provide a detailed discussion of a claimant's new evidence when denying a request for review. *Mitchell v. Comm'r of Soc. Sec. Admin*, 771 F.3d 780, 783-784 (11th Cir. 2014). However, the question

of whether evidence is new, material, and chronologically relevant is a question of law subject to *de novo* review. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015).

To be considered "new," evidence cannot be cumulative of the evidence already submitted to the ALJ. *Griffin*, 723 F. App'x 855 at 857 (citing *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)). For evidence to be "material," there must be a reasonable possibility that the evidence would change the result. *Washington*, 806 F.3d at 1321. Finally, for evidence to be "chronologically relevant," it must "relate to the period on or before the date of the hearing decision." *Griffin*, 723 F. App'x 855 at 857-858 (cleaned up); *see* 20 C.F.R. § 404.970(a)(5).

League contends the x-ray and MRI records meet the above criteria. In short, League claims the new evidence concerning his knee and back impairments is material because the ALJ discounted his alleged limitations caused by these impairments in part due to lack of objective imaging. (Tr. 30). League claims consideration of this evidence may have reduced his RFC from light to sedentary, thus leading to a finding of disabled based on the Medical-Vocational Guidelines. Finally, League claims this evidence relates back to the time period prior to the ALJ's decision because the knee x-ray is dated prior to the ALJ's decision and the lumbar MRI is only dated about one month after the ALJ's decision and relates to evidence in the record documenting back pain complaints since 2018.

While admitting the knee x-ray is chronologically relevant, the Commissioner posits the MRI is not chronologically relevant as it was taken outside the relevant time frame. Even assuming both records are chronologically relevant, the Commissioner primarily argues that the records could not reasonably be expected to alter the ALJ's decision given the longitudinal record. (Doc. 21, pp. 33-34).

The September 19, 2019 knee x-ray is chronologically relevant because it was taken before the ALJ's decision. However—as the Appeals Council properly found—the MRI was not chronologically relevant. "While evidence of deterioration of a previously considered condition may subsequently entitle a claimant to benefit from a new application, it is not probative of whether the claimant was disabled during the relevant time period under review." *Griffin*, 723 F. App'x 855 at 858 (citing *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); HALLEX I-3-3-6 (B)(2) (providing "a worsening of the condition or onset of a new condition after the date of the [ALJ's] decision" as an example of evidence that is not related to the period at issue)); *see also Enix v. Comm'r of Soc. Sec.*, 461 F. App'x 861, 863 (11th Cir. 2012).

The lumbar MRI was taken roughly one month after the ALJ's decision. League's treating physician, Knisha Williams, M.D., referred League to the MRI and followed up with him on December 9, 2019. (Tr. 90, 102). But Dr. Williams did not relate the findings from the MRI to League's status prior to the ALJ's decision.

(Tr. 90). The MRI report indicates League's condition as of November 26, 2019, which contained David Turkel, M.D.'s impression at that time. (Tr. 102-103). The MRI report and post-decision treatment notes, without more, do not establish that the MRI findings relate to the relevant period. There is no indication that the MRI findings indicated a stagnant condition that existed between League's alleged onset date and the date of the MRI. Without any indication otherwise, the Appeals Council did not err in finding the MRI report was not chronologically relevant. *See Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 858 (11th Cir. 2018) (finding the Appeals Council correctly determined that an MRI report dated four months after ALJ decision was not chronologically relevant because there was no indication the findings related back to the relevant time period).

Even if the MRI report was chronologically relevant, neither it nor the knee x-ray present a reasonable probability of changing the outcome of the ALJ's decision. *Id.* (citing *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321-1322 (11th Cir. 2015). In the decision, the ALJ acknowledged League's complaints of right knee pain and the related examination findings including effusion and range of motion limits. (Tr. 28-30). However, as noted by the ALJ, League's right knee presented as normal during many examinations. (Tr. 28-30, 382 (Nov. 2, 2017), 454 (Jan. 18, 2018), 474 (May 18, 2018), 480 (Mar. 27, 2018), 843 (Nov. 16, 2018), 848 (Aug. 17, 2018)). While the x-ray imaging documented some degenerative changes,

there is no reasonable probability that it would change the ALJ's decision in light of the multiple examination findings of record showing normal knee action without pain, normal proprioception, and a normal gait without use of an assistive device. (Tr. 28-30, 372-373, 382, 444-445, 454, 473-474, 479-480, 485, 842-843, 847-848; *see also* Tr. 71 (League testified he does not use a cane or walker to ambulate)).

Moreover, the ALJ found League's statements about the intensity, persistence, and limiting effects of his symptoms inconsistent with the ***longitudinal*** medical evidence of record. (Tr. 30). While one basis was the lack of imaging, the ALJ also noted League's treatment was conservative and no one recommended surgical intervention. While the x-ray and MRI provide imaging, neither the MRI nor the x-ray nullify the other objective medical evidence the ALJ considered with unremarkable findings. In fact, during the hearing, League's attorney remarked that there were no x-rays in the record due to the costs. As such, the attorney requested League be sent for a consultative examination with x-rays of his knees. (Tr. 82). The ALJ denied this request because it was unnecessary:

> If you had something before that, or he had, you can always go to the emergency room, he hasn't gone. So I think that's unnecessary. And we're talking about going all the way back to 2017. So, sending something post hearing to validate what he alleges in 2017, [] I think is not necessary[.]

(Tr. 82-83). So while the ALJ did not have the knee x-ray in hand when making his decision, he remarked on the temporal problem of the very type of record League claims would have changed the ALJ's decision. In short, League has not shown that

there is a reasonable possibility the new medical records submitted to the Appeals Council would change the administrative result.

## III.    Conclusion

Upon consideration of the submission of the parties and the administrative record, the decision of the Commissioner is supported by substantial evidence. Accordingly, it is **RESPECTFULLY RECOMMENDED**:

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in defendant's favor.

Reported in Fort Myers, Florida, on February 7, 2022.

_Nicholas P. Mizell_
**NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**